UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Luis Andino,

      Plaintiff,

                Hon. Hugh B. Scott

                Report
    v.               &
                Recommendation

                06CV455A

Glenn S. Goorde, et al.,

      Defendants.
_____

   Before the Court are the following: plaintiff's motion for a preliminary injunction and the defendants motion to dismiss (Docket Nos. 4 and 11).

**Background**

   Plaintiff Luis Andino ("Andino"), who is totally blind, arrived at the Wende Correctional Facility ("Wende") on March 23, 2006. He asserts that Wende is not properly equipped to house sensorially disabled inmates. In this regard, the plaintiff has filed a 43-page complaint asserting the violation of Title II of the Americans with Disability Act ("ADA") as well as Section 504 of the Rehabilitation Act of 1973. Much of the complaint is comprised of restated legal conclusions. The Court can discern the following specific factual allegations:

   On March 23, 2006, he arrived at Wende and was placed in keep-lock status due to prior disciplinary violations. He asked for accommodation forms on March 24, but did not receive

1

them. Notwithstanding, on March 27, 2006, he forwarded a written request for accommodations so that he could continue his legal matters. On March 30, 2006 he received notice of a reversal of a previous disciplinary violation and was released from keep-lock status. (Docket No. 1 at 6-7). On March 30, 2006, Andino forwarded a letter complaining of a lack of adequate talking equipment; a lack of adequate shower areas for blind inmates; that blind inmates should not be housed on the second floor of the facility. He also complained about qualified individuals with a disability being housed with general population at Wende. (Docket No. 1 at 7). During the first week of April of 2006, he asserts that he was denied access to the law library and denied the right to go to recreation due to an inadequate mobility aid program. (Docket No. 1 at 7-8).

The plaintiff claims that on April 10, 2006 he slipped in the shower because of a lack of rubber mats, handrails or seats in the shower. Andino claims that he hit his head, that he felt dizzy, but that he was denied medical treatment until the following day. (Docket No. 1 at 8-9). On April 12, 2006, he states he was forced to walk through a metal detector without his mobility aid causing him to hit the side of the metal detector twice. (Docket No. 10). Andino does not claim that this resulted in any injury. From March 23 to March 28, 2006, he was told that mobility aids "could only provide 5 minutes of reading printed materials." (Docket No. 1 at 11). According to Andino, from March 23 to May 21, 2006, no accommodations were made, or equipment provided so that Andino could conduct any reading in his cell "with respects to having the nature of plaintiff Andino confidentiality protected by assigning some on in particular that would ensure this nature of device that could be use by plaintiff Andino in his cell (sic)." During this time period, he claims that his ability to write to his girlfriend was also inhibited because of a lack of devices or "auxiliary aids" that would allow him to correspond with her in Spanish.

Similarly, he asserts he was inhibited from talking to his family because he was fearful of asking for assistance from someone who might betray his confidences. (Docket No. 1 at 12).

Andino claims that because of inadequate assistance at the law library while he was working on a state court proceeding, several legal documents were not forwarded with his pleading. (Docket No. 1 at 13). He alleges that the mobility aids assigned to work with blind inmates at the law library "did not have any knowledge in the law or with research." He also complains that during the week of March 23 to March 29, 2006, he was told that all of the legal materials on cassette in the library were at least 15 years old and that he would have to get someone to read legal books to him. (Docket No. 1 at 13). Moreover, Andino claims that he was advised by one of the defendants that the facility "deliberately lost the purchase order" for the equipment necessary to assist blind inmates. (Docket No. 1 at 17).

The plaintiff claims that his request to be transferred back to the Eastern Correctional Facility was denied because of the frequency of advocates visiting him at that facility; his complaints to outside governmental agencies about inadequacies at the facility; and his allegations against the defendants regarding the misappropriation of funds. (Docket No. 1 at 17, 21, 24-25). He also asserts that qualified individuals with a disability are denied the right given to other inmates to receive certain types of packages from family members; (Docket No. 1 at 18-19); that he was denied optical eye wear to protect from ultra violent rays. (Docket No. 1 at 20); that the defendants have failed to properly investigate or respond to his grievances. (Docket No. 1 at 21-26); and that his rights are violated because he has been asked to sign printed materials that he cannot see to read, and that these printed materials often contain misrepresentations. (Docket No. 1 at 29). The plaintiff does not cite to a specific instance when this has occurred.

On April 30, 2006, Andino asserts that he was told not to place Braille stickers on the keyboards of the typewriters in the library. (Docket No. 1 at 30). He also complains that he was denied a "legal reader" of his choice to read legal mail sent to him. (Docket No. 1 at 31). According to Andino, on May 11, 2006, the defendants searched his cell and left it in "disarray." The plaintiff asked to have one of his mobility aids assist him with reorganizing his legal work but was denied. He claims his mail was not picked up on that date as well. (Docket No. 1 at 33). He states that on May 21, 2006 his close line in his cell was cut and that his wet clothes fell on his legal papers. (Docket No. 1 at 33).

The plaintiff also complains that he was improperly denied working in the mess hall because he was wearing sneakers instead of boots on May 18, 2006. (Docket No. 1 at 34 -35). He asserts that Wende's "no talking" policy while inmates are in the hallways or stairways places him in "harm's way." (Docket No. 1 at 35). Lastly, Andino claims that on March 29, 2006 he was being escorted by an officer who "banged" Andino into an unknown inmate (who is listed as a John/Doe defendant in this action). The inmate pushed back at Andino "nearly making the plaintiff fall." The officer intervened and advised the inmate that Andino was blind. The inmate responded that "he could fucking go down too." (Docket No. 1 at 35). Andino requests a variety of injunctive relief and compensatory damages. (Docket No. 1 at 36-43).

Robert F. Raymond, the ADA Coordinator for DOCS states that Andino was received into DOCS custody for this term of incarceration on or about April 28, 2005 and was placed at the Downstate Reception Correctional Facility ("Downstate") on or about April 29, 2005. On May 3, 2005, Plaintiff was interviewed by medical personnel and advised of his right to request reasonable accommodations based upon his blindness. According to Raymond, Andino indicated

to the Downstate medical personnel who interviewed him that he was familiar with the process and accommodations available from a prior incarceration. Raymond states that Andino's rights in this regard were reviewed orally, and his intake was completed based upon his statements and responses during the interview. Similar orientation procedures are provided to inmates each time they are transferred to a new correctional facility. (Docket No. 13 at ¶¶ 4-5; Exhibit A).

The care and custody of a blind inmate is addressed by Department of Correctional Services ("DOCS") Directive 2612, "Inmates with Sensorial Disabilities." (Docket No. 13, Exhibit B).  The defendants assert that Andino was transferred to Wende after being housed for more than ten months at the Sensorially Disabled Unit of Eastern Correctional Facility ("Eastern SDU). (Docket No. 14 at ¶ 4).  The purpose of the Eastern SDU is to provide an extended assessment and training period after the completion of which inmates may be transferred to a designated mainstream facility appropriate for sensorially disabled persons. Wende is designated as such a facility.  While at Eastern SDU, blind inmates are trained in independent living skills and rehabilitative skills including the use of reasonable accommodations so that he can be mainstreamed into another facility  (Docket No. 13 at ¶ 13).[1]

The defendants assert that Wende is an appropriate mainstream facility to house blind and visually impaired inmates.  In this regard, Wende offers educational, informational and various

---

[1]  The defendants maintain that Eastern SDU has a vulnerable population due to their sensory impairments, and that not all inmates are appropriate for long-term housing at Eastern. Raymond asserts that Andino is "a capable inmate who is creative and mobile. Additionally, he has a criminal background as a predator who has demonstrated intimidating tactics." (Docket No. 13 at 16-17) At the time of this transfer from Eastern SDU, Andino was found to be unsuitable to remain in Eastern SDU. Id.

rehabilitative services under the auspices of the Hadley School for the Blind. (Docket No. 13 at ¶ 15). The defendants contend that while at Wende, Andino has regular access during program hours to the Resource Room that is equipped with numerous devices designed for the visually and hearing impaired. Inmates now have access in the Resource Room to Scan and Read appliances ("SARA") which convert any typed document into spoken words.[2]  The defendants state that there are desk top computers for the visually impaired with various talking programs installed; audio cassettes and numerous books on tape; and various tabletop games designed for the blind. The defendants further assert that there are various Braille devices available.[3] The Resource Room also contains televisions and typewriters.  The defendants state that the plaintiff and all visually impaired and blind inmates are afforded personal typewriters at DOCS' expense in their cells.  The defendants contend that the plaintiff is also afforded, for in-cell use, a talking dictionary, a talking calculator and his own cassette player.  Finally, the defendants assert that the plaintiff has a visor for outdoors and sunglasses for indoor use. (Docket No. 14 at ¶ 21-22).

The defendants also maintain that the plaintiff has equal access to the yard for recreation as the general population in addition to the recreational items in the Resource Room.  They claim that the plaintiff is also afforded equal access to the same personal hygiene and life skills equipment as the general population.  Upon majority inmate population vote, Wende was designated as a TV facility. Consequently, inmates have the option of having their own personal

---

[2]  Prior to receipt of the SARA devices, the law library clerk and inmate mobility assistants were directed to read written documents to impaired inmates.  (Docket No. 14 at ¶ 7).

[3]  According to Raymond, Andino has acknowledged he cannot read Braille. In this regard, the defendants assert that Braille classes are available if the plaintiff wished to take advantage of them. (Docket No. 13 at ¶ 21).

television sets in their cells, but are thus subject to restrictions on personal packages, as referred to in DOCS' Directive 4921 (see Docket No. 13, Exhibit H).  In this regard, the defendants assert, Andino is treated like all other inmates. (Docket No. 13 at ¶ 23).

The defendants maintain that Wende's policies relating to mobility assistants are more than adequate.  According to Wende Policy and Procedure 4019[4], inmate mobility assistants are available to escort both the wheelchair bound and the blind/visually impaired inmates to their assigned programs, health service contacts, package room, state shop, commissary, visiting room, mess hail, etc., and to their desired periods of recreation. Essentially, wherever an inmate is permitted to go, the mobility assistants will escort. The mobility assistants are expected to assist in ensuring the overall safety of the inmate and, if necessary, they must seek staff assistance. The policy provides that all mobility assistants for the blind and visually impaired are required to have a High School diploma or GED, be non-predatory, and have an acceptable record of institutional adjustment. All mobility assistants must undergo training to provide the assistance needed and upon successful completion of the training, they are deemed to be qualified to assist.[5] The defendants emphasize that inmate mobility assistants are required to assist the blind or visually impaired inmates with all reading, writing and correspondence needs during program hours.[6]  This also includes providing reading, writing and correspondence needs at the inmate's cell side.[7]   The duties of the mobility assistants are in addition to the equipment available in the

---

[4] See Docket No. 13 at Exhibit I, Sec. W(B) and VI(A)(1).

[5]  See Docket No. 13 at Exhibit I, Sec. VI(B).

[6] See Docket No. 13 at Exhibit I, Sec. VI (A)(2).

[7] See Docket No. 13 at  Exhibit I, Sec. VI (A)(2).

Resource Room as well as the various devices approved for in-cell use. (Docket No. 13 at ¶ 26).

The defendants note that the plaintiff has requested various items that cannot be provided, such as talking refrigerators, microwaves, toasters, irons, washers and dryers, talking book scanners, a lap top computer or talking typewriter, and copies of all facility documents converted to audiotape. (Docket No. 14 at ¶ 11; Docket No. 13 at ¶ 28).  These items are not the subject of the plaintiff's complaint in this case.

## Discussion

**Motion for Preliminary Injunction**

To obtain a preliminary injunction a party must demonstrate: (1) that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor. Lusk v. Village of Cold Spring,  2007 WL 259873, *4 (2d. Cir. 2007) citing Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 348-49 (2d Cir.2003). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n. 12 (1987).  A preliminary injunction is an extraordinary remedy which should not be granted lightly.  Hanson Trust PLC v. MLSCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir. 1986) (a preliminary injunction is one of the most drastic tools in the arsenal of judicial remedies).  A party moving for a preliminary injunction has the burden of demonstrating that he

8

or she will suffer irreparable harm if a preliminary injunction is not granted. Int'l. Brotherhood of Teamsters v. Local Union No. 10, 19 F.3d 786 (2d Cir. 1994). To demonstrate irreparable harm, a plaintiff must show that an injury is not remote or speculative, but actual and imminent, and that monetary damages will not suffice as a remedy. Forest City Daly Housing, Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999).  Where, as here, a moving party challenges governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party cannot resort to the "fair ground for litigation" standard, but is required to demonstrate irreparable harm and a likelihood of success on the merits. Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995). This heightened standard reflects judicial deference towards legislation and regulations developed through presumptively reasoned democratic process. Id. An even stricter standard must be used where the plaintiff seeks affirmative type relief, otherwise known as a mandatory injunction, or where the injunction sought "will provide the [inmate] with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits." Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996). In such cases, the plaintiff must make a "clear" or "substantial" showing of a likelihood of success. Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988); Costello v. McEnery, 767 F. Supp. 72, 75 (S.D.N.Y.), aff'd, 948 F.2d 1278 (2d Cir. 1991), cert. denied, 504 U.S. 980 (1992). 18 U.S.C. §3626, which dictates the appropriate remedies for prison conditions, states: "in any civil action with respect to prison conditions...the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court

shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief...in tailoring any preliminary relief." 18 U.S.C. § 362(a)(2). The statute also explicates that any prospective relief should "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). The court, moreover, is required to make particular findings when it identifies a [Federal] violation. Benjamin v. Fraser, 343 F.3d 35, 56 (2d Cir. 2003); see also Handberry v. Thompson, 446 F.3d 335, 346 (2d Cir. 2006).

     In the instant case, it does not appear that the plaintiff will suffer irreparable harm based upon the allegations in the complaint, and in any event, it does not appear likely that the plaintiff will succeed on the merits of his claims. Although the plaintiff states in conclusory language that the policies relating to mobility assistance are inadequate, the plaintiff's own allegations reflect that his mobility at Wende has not been a persistent problem. The plaintiff identifies one instance in which he claims he was denied recreation due to the lack of a mobility assistant. The record, consisting primarily of the plaintiff's extensive allegations, reflects that he is quite mobile and has not had difficulties negotiating the facilities at Wende. Further, the plaintiff has articulated no basis to conclude that the plaintiff has an entitlement to a particular mobility assistant or "legal reader" of his choosing. Again, although the plaintiff makes conclusory statements about being denied access to the law library or to legal materials, the plaintiff has not demonstrated one instance in which he was actually precluded from the library or prevented from prosecuting any of the various legal matters in which he is involved. Indeed, the record in this case once again belies any claim that he been deprived irreparably in this regard. The record reflects that in addition to his mobility assistants, Andino could have been assisted by any of the

inmate law clerks that work in the law library at Wende.  Again, the plaintiff has not articulated any basis to conclude that he is entitled to a mobility assistant who is also trained in legal research.  Injunctive relief is also not warranted with respect to the plaintiff's claims regarding the incident in which he slipped in the shower. This appears to be an isolated incident which has not repeated.  Similarly, Andino has failed to articulate any appropriate basis warranting an injunction based upon the fact that the he was denied a work assignment in the mess hall because he was wearing sneakers instead of boots.  The remaining allegations contained in the plaintiff's complaint are also conclusory (i.e. that sensorially disabled inmates should not be housed in general population or on the second floor of a facility) and inadequate to warrant a finding that Andino will suffer irreparable harm absent the grant of injunctive relief, or that he is likely to succeed on the merits of his claims.

Based on the above, it is recommended that the plaintiff's motion for preliminary injunction be denied in its entirety.

In response to the instant motion for injunctive relief, the defendants cross-moved for dismissal.  The primary argument advanced by the defendants in support of their motion to dismiss is that the plaintiff has failed to provide a short, plain statement of claim pursuant to Rules and 10 of the Federal Rules of Civil Procedure.  In a separate Order, the Court has granted the plaintiff's motion for appointment of counsel.  Counsel has been directed to review the complaint in this matter and file an amended pleading setting forth any appropriate claims on behalf of the plaintiff.  In light of this, it is recommended that the defendants motion to dismiss be denied without prejudice at this time.

**Conclusion**

It is recommended that the plaintiff's motion for preliminary injunction (Docket No. 4) be denied and defendants' motion to dismiss (Docket No. 11) be denied without prejudice.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not,

presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ *Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 28, 2007